# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **MARC WOROB, individually and as next friend of M.W.,** | § § § § | |
| *Plaintiff* | § § | |
| **v.** | § § | **Case No. 1:20-CV-00492-LY** |
| **BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION,** | § § § § § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion for Summary Judgment, filed October 19, 2020 (Dkt. 21); Defendant's Response to Plaintiff's Motion and Cross-Motion for Summary Judgment, filed November 16, 2020 (Dkt. 23); and the associated response and reply briefs. On December 4, 2020, the District Court referred Plaintiff's Motion for Summary Judgment and all related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 25.

### I.   Background

This is an action for denial of health benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-461 ("ERISA"). Plaintiff Marc Worob, individually and as next friend of his son M.W., alleges that Defendant Blue Cross Blue Shield of Texas ("BCBS") wrongfully denied coverage for treatment that M.W. received at two facilities, Outback Therapeutic Expeditions ("Outback") and Daniels Academy ("Daniels"). Worob asserts a single

cause of action for reimbursement under his BCBS employee welfare benefits plan (the "Plan")

and attorneys' fees. Dkt. 5 ¶ 6.

**A. BCBS Employee Welfare Benefits Plan**

The Plan provides coverage for five categories of Eligible Expenses: (1) Inpatient Hospital

Expenses; (2) Medical-Surgical Expenses; (3) Extended Care Expenses; (4) special provisions

expenses; and (5) pharmacy expenses. Dkt. 20-6 at 38. The first category, Inpatient Hospital

Expenses, includes "Medically Necessary services for Serious Mental Illness in a Psychiatric Day

Treatment Facility, a Crisis Stabilization Unit or Facility, a Residential Treatment Center for

Children and Adolescents, or a Residential Treatment Center in lieu of hospitalization." *Id.* at 46.

The Plan defines a Residential Treatment Center as a

> facility setting (including a Residential Treatment Center for Children and
> Adolescents) offering a defined course of therapeutic intervention and special
> programming in a controlled environment which also offers a degree of security,
> supervision, structure and is licensed by the appropriate state and local authority to
> provide such service. **It does not include half-way houses, wilderness programs,
> supervised living, group homes, boarding houses or other facilities that
> provide primarily a supportive environment and address long-term social
> needs, even if counseling is provided in such facilities.** Patients are medically
> monitored with 24 hour medical availability and 24 hour onsite nursing service for
> Mental Health care and/or for treatment of Chemical Dependency.

*Id.* at 84 (emphasis added). The second category, Medical-Surgical Expenses, is defined as the

> Allowable Amount for those charges incurred for the Medically Necessary items
> of service or supply listed below for the care of a Participant, provided such items
> are:
>
> 1. Furnished by or at the direction or prescription of a Physician, Behavioral Health
> Practitioner or Professional Other Provider; and
>
> 2. Not included as an item of Inpatient Hospital Expense or Extended Care Expense
> in the Plan.

*Id.* at 79. The Plan also specifies that benefits will not be provided for "[a]ny services or supplies

not specifically defined as Eligible Expenses in this Plan." *Id.* at 68.

### B.  Treatment at Outback

M.W.'s diagnoses include autism spectrum and depressive disorders. Dkt. 20-10 at 175. M.W.

was admitted to Outback, an outdoor behavioral health facility in Lehi, Utah, from February 26,

2018 through May 10, 2018. Dkt. 20-8 at 21; Dkt. 20-10 at 141. While at Outback, he received

medical and psychological evaluations; addictions education; individual, group and family

therapy; and case management. Dkt. 20-62 at 7.

BCBS initially paid M.W.'s claims for treatment at Outback, which were submitted under the

revenue code 1001 for Residential Treatment. Dkt. 20-7 at 1; Dkt. 20-8 at 1-5; Dkt. 20-43 at 4-5;

Dkt. 20-46 at 48; Dkt. 20-47 at 47. On October 30, 2018, BCBS denied benefits for Outback.

Dkt. 20-8 at 39. The Explanation of Benefits stated that BCBS denied reimbursement because

"[t]his service is excluded under your Health Care Plan." *Id.* Worob appealed the denial. *Id.* at 21.

On May 15, 2019, BCBS upheld its denial of M.W.'s claims, stating that "[t]he policy does not

have benefits for half-way houses, wilderness programs, supervised living, group homes, boarding

houses or other facilities that provide primarily a supportive environment and address long-term

social needs, even if counseling is provided in such facilities." Dkt. 20-8 at 85-86.

### C.  Treatment at Daniels

After his stay at Outback, on May 10, 2018, M.W. moved to the Residential Treatment Program

at Daniels, a boarding school located in Heber City, Utah, where he remained through June 30,

2019. Dkt 20-10 at 136, 141, 270; Dkt. 20-94 at 30. While at Daniels, M.W. received 24-hour

supervised care in a structured setting, psychiatric evaluations, individual therapy, family therapy,

group therapy, milieu therapy, and substance abuse treatment. Dkt. 20-10 at 197.

Daniels contacted BCBS regarding coverage for M.W.'s treatment when he was admitted.

Dkt. 20-10 at 202. BCBS informed Daniels that it had not been "establish[ed] that the services

outlined on the claim were medically necessary," and that "Outdoor Therapy/Wilderness

3

Treatment is a contract exclusion and is not covered for any diagnoses" under the Plan. *Id.* Daniels

subsequently submitted claims to BCBS for reimbursement using the revenue code 1001 for

Residential Treatment, which were denied. Dkt. 20-93 at 11-18; Dkt. 20-47 at 10, 37-38.

On April 8, 2019, Worob appealed BCBS's denial. Dkt. 20-9 at 4-25. Worob asserted that

M.W.'s treatment qualified as an Eligible Expense because Daniels is a licensed residential

treatment center regulated by the state of Utah and met the Plan's definition of an "Other Provider."

*Id.* at 7. On May 15, 2019, BCBS upheld its denial, stating that the Plan "does not have benefits

for half-way houses, wilderness programs, supervised living, group homes, [or] boarding houses."

Dkt. 20-8 at 85. BCBS also stated that the Plan's definition of "Residential Treatment Center"

specifically excludes facilities that do not provide 24-hour medical availability or 24-hour onsite

nursing service. *Id.* at 87.

Worob now moves for summary judgment on his claim against BCBS, asserting that M.W.'s

treatment at Outback and Daniels is covered under the Plan as either an Inpatient Hospital Expense

or a Medical-Surgical Expense. BCBS cross-moves for summary judgment that it properly denied

benefits under the Plan.

## II.    Legal Standards

### A.  Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure

materials, and any affidavits on file show that there is no genuine dispute as to any material fact

and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir.

2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable

jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to

view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010). Standard summary judgment rules control in ERISA cases. *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1026 (5th Cir. 2015).

**B.  ERISA**

ERISA confers jurisdiction on federal courts to review benefits determinations by plan administrators. *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (per curiam)

(citing 29 U.S.C. § 1132(a)(1)(B)). ERISA authorizes a civil action by a plan participant or beneficiary to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B). To bring a successful claim under 29 U.S.C. § 1132(a)(1)(B), the claimant must show by a preponderance of the evidence that he or she qualifies for the benefits provided in that plan. *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 348 (5th Cir. 2016); *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993).

District courts review an ERISA plan administrator's denial of benefits under a *de novo* standard unless the benefits plan gives the administrator discretionary authority to determine eligibility. *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The parties agree that, because Texas law prohibits insurers from using discretionary clauses, a *de novo* standard of review applies. TEX. INS. CODE § 1701.062; Dkt. 21 at 6; Dkt. 23 at 14. Under a *de novo* standard, a district court interprets the Plan's language "in an ordinary and popular sense" and gives the language "its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997).

### III.   Analysis

Because the parties have moved for summary judgment on the same issues, the Court addresses the motions jointly.

### A.  Inpatient Hospital Expenses

As noted above, "half-way houses, wilderness programs, supervised living, group homes, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities," are excluded from the Plan's definition of Residential Treatment Centers. Dkt. 20-6 at 46. BCBS contends that the Plan thus clearly excludes Outback and Daniels from the definition of Residential Treatment Centers,

making their services ineligible for reimbursement as Inpatient Hospital Expenses. Dkt. 23 at 16-20.

After first arguing to the contrary in his motion, Worob concedes in his reply brief that the services provided by Outback and Daniels are not Inpatient Hospital Expenses. Dkt. 24 at 3. Consequently, there is no factual dispute that Outback and Daniels' services are not properly categorized Inpatient Hospital Expenses, and BCBS is entitled to summary judgment that it properly denied coverage for services at Outback and Daniels as Inpatient Hospital Expenses.

### B.  Medical Surgical Expenses

Worob next argues that the treatments provided by Outback and Daniels are Medical-Surgical Expenses. To qualify as a Medical-Surgical Expense under the Plan, a service or supply must be (1) Medically Necessary, and (2) furnished by or at the direction or prescription of a Physician, Behavioral Health Practitioner, or Professional Other Provider. Dkt. 20-6 at 79. Worob contends that M.W.'s treatments at Outback and Daniels were Medically Necessary and furnished at the direction of Behavioral Health Practitioners.[1] Dkt. 24 at 3. BCBS contends that there has been no determination of Medical Necessity and that M.W.'s treatment at Outback and Daniels was not "furnished" by physicians or providers. Dkt. 26 at 10-12.

For the first element, the Plan defines Medically Necessary as "those services or supplies covered under the plan which are . . . [e]ssential to, consistent with, and provided for the diagnosis or direct care and treatment of the condition, sickness, disease, injury or bodily malfunction." *Id.* at 80. BCBS makes an independent determination of Medical Necessity under the Plan, even for treatment prescribed for the Plan participant. *Id.*

---

[1] Worob made this argument for the first time in his reply brief; BCBS responded fully in its reply in support of its cross-motion. Dkt. 24 at 3; Dkt. 26 at 8-13.

Worob contends that "there is no dispute that the services provided to [M.W.] at both Outback and Daniels were Medically Necessary." Dkt. 24 at 3. BCBS states that it never conducted a Medical Necessity review for M.W.'s treatment because it determined that neither facility qualified as a Residential Treatment Center. Dkt. 26 at 10. The issue of Medical Necessity need not be decided, however, because Worob's claim fails on the second element.

To satisfy the second element for a Medical-Surgical Expense under the Plan, a service must be (1) provided by the Physician, Behavioral Health Practitioner, Professional Other Provider, or their employee, (2) at their usual place of business, and (3) billed to the patient directly. *Id.* Worob submitted evidence that physicians or behavioral health practitioners provided or directed M.W.'s treatment at Outback and Daniels. Therefore, he argues, the treatment was a Medical-Surgical Expense.

Medical records show that Outback Medical Director Dale Christensen, M.D., and Outback Clinical Director Greg Burnham, MS, LMFT, provided M.W.'s treatment. Dkt. 20-10 at 44-50, 61-73, 84, 88-90. The records also show that Poonam Soni, M.D., Kelly Shaheen, LCSW, and Chris Brown, LMFT, provided M.W.'s treatment at Daniels. *Id.* at 186-193, 197-200; Dkt. 20-94 at 50; Dkt 20-95 at 1. There is no evidence, however, that any of those professionals billed M.W. directly for their services; to the contrary, BCBS offers evidence that Outback and Daniels billed BCBS directly for their services. Dkt. 20-7 at 1; Dkt. 20-8 at 1-5; Dkt. 20-46 at 48; Dkt. 20-93 at 11-18. Without evidence of direct billing to the patient, Outback and Daniels did not "furnish, direct or prescribe" services to M.W. as required under the Plan. Therefore, there is no genuine issue of material fact that M.W.'s treatment at Outback and Daniels was not an eligible Medical-Surgical Expense, and BCBS is entitled to summary judgment that it properly denied coverage for Outback and Daniels as Medical-Surgical Expenses.

### IV.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (Dkt. 21), **GRANT** Defendant's Cross-Motion for Summary Judgment (Dkt. 23), and enter judgment for Defendant.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

### V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 1, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE